LISA LIN GARCIA, Bar No. 260582
llgarcia@littler.com
ROBERT GEIGER, Bar No. 322914
rgeiger@littler.com
LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, California 94104
Telephone:   415.433.1940
Fax No.:     415.399.8490

Attorneys for Defendants
MAXIM HEALTHCARE SERVICES, INC., MAXIM HEALTHCARE SERVICES HOLDINGS, INC. and MAXIM HEALTHCARE STAFFING SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cindy Villanueva, Individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>Maxim Healthcare Services, Inc., a Maryland corporation; Maxim Healthcare Services Holdings, Inc., a Delaware corporation; Maxim Healthcare Staffing Services, Inc., a Maryland corporation; and Does 1 through 100, inclusive;<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>Complaint Filed:   June 1, 2023<br>*(Alameda County Superior Court Case No. 23CV034697)* |

DEFENDANTS' NOTICE OF REMOVAL

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CINDY VILLANUEVA AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Maxim Healthcare Services, Inc., Maxim Healthcare Services Holdings, Inc. and Maxim Healthcare Staffing Services, Inc. (collectively, "Defendants"), by and through their counsel, remove the above-entitled action to this Court from the Superior Court of the State of California, County of Alameda, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. This removal is based on the following grounds:

## I.   PROCEDURAL BACKGROUND.

1. On June 1, 2023, Plaintiff Cindy Villanueva ("Plaintiff") filed an unverified putative class action complaint in the Superior Court of the State of California, County of Alameda, entitled *Cindy Villanueva, Individually and on behalf of all others similarly situated v. Maxim Healthcare Services, Inc., a Maryland corporation; Maxim Healthcare Services Holdings, Inc., a Delaware corporation; Maxim Healthcare Staffing Services, Inc., a Maryland corporation; and Does 1 through 100, inclusive*, Case No. 23CV034697 (the "Complaint").

2. On June 1, 2023, the Court scheduled a Complex Determination Hearing for July 7, 2023 and an Initial Case Management Conference for October 11, 2023.

3. On June 7, 2023, Plaintiff served copies of the Summons, Complaint, Civil Case Cover Sheet, Notice of Complex Determination Hearing and Notice of Case Management Conference on the registered agents for Defendants. True and correct copies of these documents are attached as **Exhibit A**.

4. On June 9, 2023, Plaintiff filed Proofs of Service of 30-Day Summons & Complaint on Maxim Healthcare Services Holdings, Inc. and Maxim Healthcare Services, Inc. True and correct copies of these Proofs of Service are attached as **Exhibit B**.

5. On June 26, 2023, Plaintiff filed a Proof of Service of 30-Day Summons & Complaint on Maxim Healthcare Staffing Services, Inc. A true and correct copy of this Proof of Service is attached as **Exhibit C.**

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANTS' NOTICE OF REMOVAL

6. Exhibits A through C constitute all the pleadings, process, and orders served upon or filed by Defendants in the Superior Court action.

7. Plaintiff alleges that she is a former employee of Defendants in California and that she seeks to bring his action on behalf of "all others similarly situated in California" that includes "[a]ll current and former non-exempt California employees of Defendants from four years and 179 [days] preceding the filing of the Complaint." (Exh. A, Compl. ¶¶ 5, 22).

8. Plaintiff seeks class damages for: (1) failure to pay all wages for all hours worked, including minimum and overtime wages; (2) failure to provide required meal periods; (3) failure to authorize or permit rest breaks; (4) failure to provide accurate, itemized wage statements; (5) failure to reimburse all reasonable and necessary business expenses; and (6) failure to pay all wages due upon separation of employment. (Exh. A, Compl. ¶ 4).

## II. REMOVAL IS TIMELY.

9. This Notice of Removal is timely under 28 U.S.C. §§ 1446(b)(3) and 1453 because it is filed within thirty days of service of the Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION OVER THE COMPLAINT UNDER CAFA.

10. Plaintiff brings this action as a putative class action under California Code Civil Procedure section 382.[1] (Exh. A, Compl. ¶¶ 6, 20, 24). Removal based upon the Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because: (i) diversity of citizenship exists between at least one putative class member and Defendants, (ii) the aggregate number of putative class members in the proposed class is 100 or greater; and (iii) the

---

[1] Defendants deny, and reserve the right to contest at the appropriate time, that this action can properly proceed as a class action. Plaintiff is bound by an arbitration agreement requiring her to arbitrate her claims against Defendants on an individual basis. Defendants expressly reserve the right to enforce the arbitration agreement and to move to compel arbitration of Plaintiff's claims on an individual basis. Defendants expressly reserve the right to compel arbitration of the claims of any and all putative class members on an individual basis. Defendants further deny Plaintiff's claims and denies that she can recover any damages.

1  amount placed in controversy by the Complaint exceeds $5 million in the aggregate, exclusive of

2  interest and costs. 28 U.S.C. §§ 1332(d)(2) & (d)(5)(B), 1453. Although Defendants deny Plaintiff's

3  factual allegations and denies that Plaintiff—or the class she purports to represent—is entitled to the

4  relief requested, based on Plaintiff's allegations in the Complaint and prayer for relief, all requirements

5  for jurisdiction under CAFA have been met in this case.

### A. Diversity of Citizenship Exists.

7  11.   To satisfy CAFA's diversity requirement, a party seeking removal need only show that

8  minimal diversity exists, that is, that one putative class member is a citizen of a state different from

9  any defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied*

10 *Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir.

11 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction

12 for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)). "An

13 individual is a citizen of the state in which he is domiciled . . . ." *Boon v. Allstate Ins. Co.*, 229 F.

14 Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th

15 Cir. 2001)).

16 12.   For purposes of diversity of citizenship jurisdiction, citizenship is determined by the

17 individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*,

18 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence

19 of continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d

20 340, 395 (3d Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

21 13.   In her Complaint, Plaintiff states that she "is a citizen of California" (Exh. A, Compl.

22 ¶ 10). The Complaint does not allege that Plaintiff is a citizen of any other state. Therefore, Plaintiff

23 is a citizen of California for diversity jurisdiction purposes.

24 14.   For CAFA diversity purposes, a corporation is deemed to be a citizen of any state in

25 which it has been incorporated and of any state where it has its principal place of business. 28 U.S.C.

26 § 1332(c)(1). The "principal place of business" for the purpose of determining diversity subject matter

27 jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the

28 corporation's activities . . . [I]n practice it should normally be the place where the corporation

maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . ." *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

15.     Defendant Maxim Healthcare Services, Inc. is organized under the laws of Maryland and has its principal place of business in Columbia, Maryland. Maxim Healthcare Services, Inc.'s corporate headquarters is in the State of Maryland, as is the majority of its corporate books and records and its executive and administrative functions (including but not limited to operations, corporate finance, accounting, human resources, payroll, marketing, legal, and information systems). In addition, Maxim Healthcare Services, Inc.'s chief financial officer, and corporate secretary, as well as many other corporate executives work from the Maryland headquarters and direct, control, and coordinate Maxim Healthcare Services, Inc.'s corporate activities from Maryland. Accordingly, Maxim Healthcare Services, Inc. is a citizen of Maryland for diversity jurisdiction purposes. 28 U.S.C. § 1332(d)(10).

16.     Defendant Maxim Healthcare Services Holdings, Inc. is organized under the laws of Delaware and has its principal place of business in Columbia, Maryland. Maxim Healthcare Services Holdings Inc.'s chief executive officer, chief financial officer, and corporate secretary work from the Maryland headquarters. Accordingly, Maxim Healthcare Services Holdings, Inc. is a citizen of Delaware and Maryland for diversity jurisdiction purposes. 28 U.S.C. § 1332(d)(10).

17.     Defendant Maxim Healthcare Staffing Services, Inc. is organized under the laws of Maryland and has its principal place of business in Columbia, Maryland. Maxim Healthcare Staffing Services Inc.'s corporate headquarters is in the State of Maryland, as is the majority of its corporate books and records and its executive and administrative functions (including but not limited to operations, corporate finance, accounting, human resources, payroll, marketing, legal, and information systems). In addition, Maxim Healthcare Staffing Services, Inc.'s president, chief financial officer, and corporate secretary, as well as other corporate executives work from the Maryland headquarters and direct, control, and coordinate Maxim Healthcare Staffing Services, Inc.'s corporate activities from Maryland. Accordingly, Maxim Healthcare Staffing Services, Inc. is a citizen of Maryland for diversity jurisdiction purposes. 28 U.S.C. § 1332(d)(10).

18. Therefore, based on the Complaint, at least one member of the putative class is a citizen of a state different than the defendants. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### B. The Putative Class Has More Than 100 Members.

19. Plaintiff worked for Maxim Healthcare Staffing Services, Inc. as a Psychiatric RN, a non-exempt position. In the Complaint, Plaintiff seeks to represent "[a]ll current or former non-exempt California employees of Defendants from four years and 179 [days] preceding the filing of this Complaint" and contends that there are "greater than 100 individuals" in the putative class. (Exh. A, Compl. ¶¶ 22, 25(a)). Based on Maxim Healthcare Staffing Services, Inc.'s employment data, Defendants are informed and believe that Maxim Healthcare Staffing Services, Inc. employed at least 309 non-exempt Psychiatric RNs in California during the four years and 179 days preceding the filing of the Complaint. The Psychiatric RNs are only a subset of the putative class that Plaintiff seeks to present. Thus, the putative class contains more than 100 members.

### C. The Amount In Controversy Exceeds $5,000,000.

20. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Because Plaintiff does not expressly plead a specific amount of class damages, Defendants need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). Defendants' burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81 (2014); *see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

21. "[A] removing defendant is not obligated to research, state and prove the plaintiff's claims for damages." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, *2 (C.D. Cal. April 28,

1  2015) (citation omitted). *See also LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy."). The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (citation omitted) (explaining that courts are directed "to first look to the complaint in determining the amount in controversy").

22. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Dart Cherokee*, 574 U.S. at 89; *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("a removing defendant's notice of removal **need not contain evidentiary submissions** but only plausible allegations of jurisdictional elements.") (internal quotations omitted) (emphasis added). The removal allegations "may rely on 'a chain of reasoning that includes assumptions' and 'an assumption may be reasonable if it is founded on the allegations of the complaint.'" *Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (quoting *Arias v. Residence Inn by Marriott*, 2019 WL 4148784, at *4 (9th Cir. Sept. 3, 2019)). Where the plaintiff "could have, but did not, make more specific allegations to narrow the scale or scope of th[e] controversy," courts "have assumed 100% violation rates" based on the complaint's "sweeping allegations." *Id.* at *3. As detailed below, Defendants plausibly allege that the amount in controversy exceeds $5 million based on Plaintiff's sweeping allegations, and that the Court has jurisdiction pursuant to CAFA. When the claims of the putative class members in the present case are aggregated, their claims put into controversy over $5 million in potential damages. 28 U.S.C. § 1332(d)(2).

23. Although Defendants deny Plaintiff's factual allegations and denies that she or the class she seeks to represent are entitled to the relief for which she has prayed, Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C.

DEFENDANTS' NOTICE OF REMOVAL
7

1  § 1332(d)(6).[2]

2  24.  As explained above, Plaintiff seeks to represent a putative class of more than 100 members. (Exh. A, Compl. ¶ 25(a)). Defendants have reviewed certain data concerning a subset of the putative class that Plaintiff seeks to represent. Based on the allegations in the Complaint, Plaintiff has put more than $5 million in controversy on this subset alone as set forth below, and CAFA removal is appropriate.

25.  Plaintiff alleges a cause of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq.* (Exh. A, Compl. ¶¶ 33-34). Alleging a UCL violation may extend the statute of limitations for Plaintiff's and the putative class's overtime and minimum wage claims as well as the reimbursement and meal and rest period claims from three to four years from the filing of the Complaint. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL). Additionally, Plaintiff seeks to toll the statute of limitations in this matter by 179 days pursuant to California Rules of Court, Appendix I, Emergency Rule No. 9. (Exh. A, Compl. ¶ 22, n. 1). As such, the statute of limitations of these claims arguably extend to December 4, 2018, which is four years and 179 days from the filing of the Complaint.

26.  As explained above, since December 4, 2018, there are at least 309 individuals who are or were employed by Maxim Healthcare Staffing Services, Inc. in a non-exempt Psychiatric RN position in California. Based on the allegations in the Complaint, Plaintiff has put more than $5 million in controversy as set forth below, and CAFA removal is appropriate.

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or any putative class member. Defendants expressly deny that Plaintiff or any putative class member is entitled to recover any of the penalties sought in the Complaint. In addition, Defendants deny that liability or damages can be established on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

DEFENDANTS' NOTICE OF REMOVAL         8

### 1. Plaintiff's Failure to Pay Overtime Put At Least $507,330 in Controversy.

27. Plaintiff alleges that her class claims are based on Defendants' alleged failure to pay overtime and doubletime for off-the-clock work, for example, during meal periods, while performing online training, and while recording and verifying administrative time and travel time. (Exh A, Compl. ¶¶ 30, 49). Plaintiff further alleges that Defendants failed to pay overtime at the proper regular rate of pay. (Exh A, Compl. ¶ 50).

28. California Labor Code section 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. Cal. Labor Code § 510.

29. Based on a subset of Plaintiff's class definition and Defendants' review of employment records, Defendants are informed and believe that individuals employed by Maxim Healthcare Staffing Services, Inc. worked in a non-exempt Psychiatric RN position in California for at least approximately 5,637 weeks between February 13, 2019 and June 30, 2023. Based on Maxim Healthcare Staffing Services, Inc.'s time records of Plaintiff, Plaintiff worked on average approximately 12.59 hours. Also, Plaintiff's wage statements reflect that she regularly worked more than 8 hours per day and earned an hourly base rate of $30.

30. Plaintiff asserts she is typical of the class. The Complaint alleges that when Plaintiff and alleged class member worked off-the-clock during meal periods, while performing online training, and while recording and verifying administrative time and travel time, this resulted in a failure to pay overtime. (Exh. A, Compl. ¶¶ 30, 50). While Defendants deny the validity and merit of Plaintiff's overtime claims, for purposes of removal only, using an assumption that Plaintiff and the other Psychiatric RNs reported on a daily average of 12.59 hours worked and are on average due 1.5 hours of unpaid doubletime per week that they worked off the clock, and using Plaintiff's $30 hourly base rate, Plaintiff's overtime claim places at **$507,330.00** in controversy: $30 x 2 x 1.5 hours x 5,637 work weeks = **$507,330.00**.

**2.   Plaintiff's Meal Period Claim Puts At Least $338,220 in Controversy.**

31.   Plaintiff alleges that during the relevant time period, she and class members did not receive compliant meal periods for each five hours worked per day. (Exh. A, Compl. ¶ 59). Plaintiff further alleges that Defendants failed to pay meal period premiums at the regular rate of pay. (Exh. A, Compl. ¶ 61).

32.   California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a meal period was not provided as a meal break premium. Cal. Labor Code § 226.7.

33.   For purposes of assessing the amount in controversy, Plaintiff's allegations support a 100% violation rate with respect to claims of unprovided meal and rest periods. *Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy). Nevertheless, Defendants use a conservative assumption that Plaintiff's allegations place damages in controversy based on an average of two non-compliant meal periods per week for Plaintiff and the other Psychiatric RNs that she seeks to represent. Therefore, using an hourly rate of $30 (Plaintiff's base hourly rate) for each allegedly similarly situated employees, Plaintiff's meal period claim places at least **$338,220.00** in controversy:  $30 x 2 hours of meal break premium pay per week x 5,637 work weeks = **$338,220.00**.

**3.   Plaintiff's Rest Break Claim Puts At Least $507,330 in Controversy.**

34.   Plaintiff alleges that during the relevant time period, she and class members did not receive compliant rest periods for each four hours worked per day. (Exh. A, Compl. ¶¶ 35, 66). Plaintiff further alleges that Defendants failed to pay rest period premiums at the regular rate of pay. (Exh. A, Compl. ¶ 68).

35.   California law permits recovery of one additional hour of pay at the employee's regular rate of compensation for each workday a rest break was not provided as a rest break premium. Cal. Labor Code § 226.7.

36. For purposes of assessing the amount in controversy, given the greater frequency in which the putative class are entitled to rest breaks than meal periods, Defendants use an assumption that Plaintiff's allegations place in controversy based on an average of three non-compliant rest breaks per week for Plaintiff. Therefore, using an hourly rate of $30 (Plaintiff's base hourly rate) for each allegedly similarly situated employees, Plaintiff's rest period claim places at least **$507,330.00** in controversy: $30 x 3 hours of rest break premium pay per week x 5,637 work weeks = **$507,330.00**.

### 4. Plaintiff's Failure to Provide Accurate, Itemized Wage Statements Claim Puts At Least $248,850 in Controversy.

37. Plaintiff alleges that Defendants "knowingly and intentionally" provided inaccurate wage statements by, among other things, failing to correctly state the gross and net wages earned, accurate inclusive dates of the pay period, the correct name of the legal employer and all applicable hourly rates and number of hours worked. (Exh. A, Compl. ¶ 72).

38. An employee seeking to recover under California Labor Code section 226(e) is entitled to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Labor Code § 226(e). The statutory period for Labor Code section 226(e) penalties is one year. Cal. Code Civ. Proc. § 340.

39. Plaintiff seeks to recover statutory penalties in the amount of $50.00 for the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in which a violation occurred. (Exh. A, Compl. ¶¶ 74-75).

40. Here, during the relevant one-year statute of limitation period, Defendants provided wage statements to Plaintiff and to putative class members on a weekly basis. Between June 1, 2022 to June 30, 2023, Defendants are informed and believe that Maxim Healthcare Staffing Services, Inc. issued wage statements to approximately 180 non-exempt employees who have held a Psychiatric RN position in California. Of these employees, Defendants are informed and believe that they worked approximately 2,653 or more weeks between June 1, 2022 and June 30, 2023. Assuming, *arguendo*, that each employee during the statutory period was entitled to $50 for the initial inaccurate pay stub

and a $100 penalty thereafter per pay period, not to exceed $4,000, the potential amount in controversy for this claim alone is **$248,850.00**.

### 5. Plaintiff's Failure to Reimburse for Business Expenses Puts At Least $47,790 in Controversy.

41. Plaintiff alleges that Defendants required Plaintiff and class members to use their own cellular phones in the discharge of their duties but were not reasonably compensated for these expenses. (Exh. A, Compl. ¶ 81). The Complaint does not allege the amounts sought for these expenses, but Plaintiff alleges that she is seeking reimbursement on behalf of herself and all putative class members for "all necessary expenditures." (*Id.* at ¶ 82). Plaintiff's allegations of a company failure to provide reimbursement of cell phone expenses to putative class members permits Defendants to reasonably assume for purposes of removal "that each putative class member could recover unreimbursed expenses for every month worked." *Anderson v. Starbucks Corp.*, No. 3:20-CV-01178-JD, 2020 WL 7779015, at *4 (N.D. Cal. Dec. 31, 2020). In *Anderson*, the district court held that a monthly cell phone reimbursement of $32.50 per employee was a "reasonable basis for estimating" the amount in controversy on a cell phone reimbursement claim, and conservatively represents a recovery that would be "less than a full recovery of the monthly plan fee . . . ." *Id.* However, for purposes of this removal, Defendants use an even more conservative assumption that Plaintiff is seeking an average monthly recovery of $30.00 per employee.

42. Here, Defendants are informed and believes that there are at least 1,593 months worked by Plaintiff and other Psychiatric RNs employees of Maxim Healthcare Staffing Services, Inc. in California during the putative class period. At $30.00 in alleged unpaid cell phone reimbursements per month, Plaintiff's failure to reimbursement for necessary cell phone expenses claim places at least **$47,790.00** in controversy: $30 x 1,593 months = **$47,790.00**.

### 6. Plaintiff's Claim for Failure to Pay All Wages Due to Separated Employees Puts at Least $2,445,498 in Controversy.

43. Plaintiff alleges that Defendants failed "to pay all wages due upon separation of employment." (Exh. A, Compl. ¶ 4(f)).

44. California Labor Code section 203 provides that an employer who willfully fails to timely pay wages to an employee who is discharged or quits, must pay, as a penalty, the "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203. Waiting time penalty is subject to a three year statute of limitations. Additionally, Plaintiff contends California Rules of Court, Appendix I, Emergency Rule No. 9 applies. (Exh. A, Compl. ¶ 22, n. 1). Under Emergency Rule No. 9, the claims with statutes of limitations that exceed 180 days are tolled from April 6, 2020 and October 1, 2020.

45. Defendants are informed and believes that since April 6, 2020, at least 179 individuals were employed by Maxim Healthcare Staffing Services, Inc. in a non-exempt Psychiatric RN position in California whose employment have separated. For purposes of this Notice of Removal only, Defendants assume anyone who had previously performed work since April 6, 2020 and had no assignment in 2023 as having been separated. The Complaint alleges Defendants failed to pay all wages due upon separation of employment. (Exh. A, Complaint ¶ 4(f)). Based on Plaintiff's allegations, it is appropriate to use a 100% violation rate for waiting time penalties to calculate the amount in controversy. *See Ford v. CEC Entm't, Inc.*, 2014 WL 3377990 (N.D. Cal. 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . [b]ecause no averment in the complaint supports an inference that these sums were ever paid.").

46. Using Plaintiff's final rate of pay of $30 per hour and her average length of work days of 12.59 hours, the Complaint puts in controversy Labor Code section 203 waiting time penalties of $455.40 per day ([$30 x 8 hours] + [$45 x 4 overtime hours] + [$60 x 0.59 doubletime hours] = $455.40), or at least **$2,445,498.00** in the aggregate ($455.40 x 179 employees x 30 days = **$2,445,498.00**).

### 7. Plaintiff's Request for Attorneys' Fees Places Additional Amounts in Controversy, Exceeding the CAFA Threshold.

47. Plaintiff seeks to recover attorneys' fees under various provisions of the California Labor Code, including sections 226 and 1194, as well as California Code of Civil Procedure section 1021.5. (Exh. A, Compl. ¶¶ 5, 44, 53, 74, 76, 80, 83, 90, Prayer for Relief, ¶ 6). Future attorneys'

fees are properly included in determining the amount in controversy, including for class actions seeking fees under Labor Code Section 226. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793–94 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). Courts in the Ninth Circuit "have treated a potential 25% fee award as reasonable" in wage and hour class actions removed under CAFA. *See Anderson*, 2020 WL 7779015, at *4; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("We note with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent.") (citation omitted).

48. Aggregating the foregoing figures for these six claims, Plaintiff's alleged amount in controversy is at least **$4,095,018** ($507,330 + $338,220 + $507,330 + $248,850 + $47,790 + $2,445,598 = **$4,095,018**) based on the allegations in the claims discussed above. Although Defendants deny Plaintiff's claim for attorneys' fees, inclusion of attorneys' fees for purposes of removal by calculating 25% of the amount in controversy in this case, as detailed above, adds another **$1,023,754.50** in controversy (25% of $4,095,018 = **$1,023,754.50**), bringing the total amount in controversy to at least **$5,118,772.50**. These calculations do not include the amount in controversy concerning Plaintiff's failure to pay at the proper regular rate of pay claim and request for liquidated damages. Further, the amount in controversy as calculated above concerns the individuals who were employed as Psychiatric RNs in California by Maxim Healthcare Staffing Services, Inc., which is only a subset of the putative class Plaintiff seeks to represent. The amount in controversy for the full putative class as pled in the Complaint (*i.e.*, all non-exempt employees employed by Defendants in California) will be far greater.

49. Therefore, the amount in controversy is above the minimum threshold for CAFA jurisdiction.

**IV. VENUE**

50. This action was originally filed in the Superior Court for the County of Alameda. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action is pending.

DEFENDANTS' NOTICE OF REMOVAL
14
LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor

## V. NOTICE

51. Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. CONCLUSION

Based on the foregoing, Defendants request that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

Dated: July 7, 2023

LITTLER MENDELSON, P.C.

*/s/ Robert Geiger*
LISA LIN GARCIA
ROBERT GEIGER
Attorneys for Defendants
MAXIM HEALTHCARE SERVICES, INC.,
MAXIM HEALTHCARE SERVICES
HOLDINGS, INC. and MAXIM
HEALTHCARE STAFFING SERVICES, INC.

4878-8565-3100.4 / 119998-1006

DEFENDANTS' NOTICE OF REMOVAL

15