UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CINDY VILLANUEVA,

Plaintiff,

v.

MAXIM HEALTHCARE SERVICES, INC., et al.,

Defendants.

Case No.  23-cv-03403-JSC

**ORDER RE: MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 8

Cindy Villanueva brings a putative class action against Maxim Healthcare Services, Inc., Maxim Healthcare Services Holdings, Inc., and Maxim Healthcare Staffing Services Inc. (collectively "Maxim").  Maxim moves to compel arbitration according to the terms of an arbitration agreement Villanueva signed.  Because the parties signed a valid arbitration agreement that covers Villanueva's claims, the Court grants Maxim's motion to compel arbitration.

## I.      COMPLAINT ALLEGATIONS

Maxim proves healthcare staffing services to hospitals and healthcare facilities throughout California.  (Dkt. No. 1-1 ¶ 2.)  Villanueva alleges Maxim "engaged in a systematic pattern of wage and hour violations" under California Law, including, in part, failing to pay minimum and overtime wages, failing to provide meal periods or rest breaks, and failure to reimburse necessary business expenses.  (*Id.* ¶¶ 3-4.)  Plaintiff seeks to bring this action on behalf of a class of Maxim's employees.  (*Id.* ¶ 20.)

## II.     PROCEDURAL HISTORY

Villanueva filed her action in California state court and Defendant removed the action to this Court.  (Dkt. No. 1.)  Maxim then filed a Motion to Compel Arbitration.  (Dkt. No. 8.) Maxim asserts "Plaintiff agreed to be bound by a mandatory arbitration agreement with Maxim"

United States District Court
Northern District of California

when she signed an arbitration agreement as part of her onboarding.  (*Id.* at 8-9.)  Villanueva opposes Maxim's motion, asserting the arbitration agreement is unconscionable and therefore, unenforceable.  (Dkt. No. 18 at 5.)

## III.    DISCUSSION

The Federal Arbitration Act ["FAA"] governs arbitration agreements "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *Id.*  In resolving a motion to compel arbitration, this Court must decide two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (cleaned up).

### A.    Gateway Issues Were Not Delegated to the Arbitrator

Before addressing either of the gateway issues, the Court must decide whether the determination of those issues is itself delegated to the arbitrator.  *Id.*, 999–1000 (Both "gateway issues can be expressly delegated to the arbitrator.").  The Ninth Circuit instructs courts to apply a "more rigorous standard" than a traditional application of contract principles "in determining whether the parties have agreed to arbitrate the question of arbitrability."  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up).

Section XII of the agreement, titled "Judicial Enforcement" establishes "[e]ither EMPLOYEE or MAXIM may bring an action in any court of competent jurisdiction to compel arbitration of this agreement."  (Dkt. No. 8-3 at 24.)  Thus, the arbitration agreement itself indicates parties have agreed determination of gateway issues is for the Court, not an arbitrator.

Maxim argues the arbitration agreement's incorporation of the American Arbitration Association (AAA) rules constitutes clear and unmistakable intent to delegate arbitrability questions to an arbitrator, citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Circ. 2015).

United States District Court
Northern District of California

1  The explicit terms of the arbitration agreement control any conflict between that agreement and

2  AAA rules.  *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) (when agreement

3  incorporates AAA rules by reference, explicit terms of agreement regarding discovery provisions

4  control even though they conflicted with AAA rules on discovery).  Moreover, even assuming the

5  AAA rules applied to this issue, *Brennan* left unresolved whether its ruling applies when at least

6  one of the arbitration agreement parties is unsophisticated.  *Brennan,* 796 F.3d at 1131*; see also*

7  *MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 609 F.Supp.3d 1024, 2022 WL 2390997,

8  at *3 (N.D. Cal. July 1, 2022) ("Where at least one party is unsophisticated, courts in this district

9  and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to

10  establish a clear and unmistakable agreement to arbitrate arbitrability").

11  As the party seeking to enforce the contract, Maxim bears the burden of establishing the

12  delegation clause is enforceable.  *See Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)

13  ("[G]ateway issues of arbitrability presumptively are reserved for the court"); *Ingalls v. Spotify*

14  *USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016)

15  (Explaining the party seeking to compel arbitration has the "burden to establish that the delegation

16  clause is enforceable").  Since Maxim did not demonstrate Villanueva was a sophisticated party

17  and did not address why *Brennan* should apply if Villanueva is unsophisticated, Maxim failed to

18  establish the parties delegated the threshold arbitrability question to the arbitrator.  Thus, this

19  Court will proceed by deciding the gateway issues itself.

20  **B.     A Valid Agreement to Arbitrate Exists**

21  As to the first gateway issue, it is undisputed that before she began employment with

22  Maxim, Villanueva signed a document titled "Mutual Agreement to Arbitrate Employment-

23  Related Disputes."  (Dkt. No. 18 at 7.)  That agreement includes all Defendants.  (Dkt. Nos. 8 at

24  16, 8-3 at 20.)  However, under the Federal Arbitration Act ("FAA"), agreements to arbitrate may

25  be found invalid "upon such grounds as exist at law or in equity for the revocation of any

26  contract."  9 U.S.C. § 2.  Federal courts apply state contract law to determine whether an

27  arbitration agreement is enforceable.  *Pokorny v. Quixtar*, 601 F.3d 987, 994 (9th Cir. 2010).

28  Both parties agree California law applies to this dispute.  Plaintiff argues the arbitration

agreement is unconscionable and thus unenforceable.  "Under California law, a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (cleaned up).  However, procedural and substantive unconscionability need not be present to the same degree: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (quotation marks and citation omitted).

### a.    Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement."  *Chavarria v. Ralphs Grocery Co*., 733 F.3d 916, 922 (9th Cir. 2013).  "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in no real negotiation."  *Id.* (cleaned up).  "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party."  *Id.*  The California Supreme Court has cautioned that in the "employment setting" the "economic pressure exerted by employers . . . may be particularly acute," so courts should be "particularly attuned" to the "danger of oppression and overreaching."  *Baltazar v. Forever 21, Inc.,* 62 Cal. 4th 1237, 1244 (2016).

Both sides agree the arbitration agreement was a mandatory condition of Villanueva's employment with Maxim and Villanueva had no opportunity to negotiate or change the agreement's terms.  Since "[a] contract is procedurally unconscionable if it is a contract of adhesion, i.e., a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it," *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003), there is at least some level of procedural unconscionability present.

But, concluding the contract was adhesive is "insufficient to invalidate an arbitration agreement: Rather, an adhesion contract remains fully enforceable unless . . . the provision falls outside the reasonable expectations of the weaker party or it is [substantively] unconscionable."

4

*Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 689 (2014) (cleaned up).  Villanueva argues an additional level of procedural unconscionability was present because Maxim failed to provide Villanueva with "a copy of applicable AAA Rules" and thus Villanueva was "not aware of the terms" of the contract.  (Dkt. No. 18 at 13.)  The arbitration agreement Villanueva signed provided any arbitration "shall be conducted before a single, neutral arbitrator of the American Arbitration Association ("AAA") . . . in accordance with and selected pursuant to the then-current rules and procedures of the Employment Arbitration Rules of the AAA (the 'Rules') to the extent not inconsistent with the terms of this Agreement."  (Dkt. No. 8-3 at 23.)  The agreement then listed "www.adr.org" as the location where parties could find "[t]he most current version of the Rules" and further indicated "[a] printed copy of these rules is also available from MAXIM upon request."  (*Id.*)

The California Supreme Court has held "courts will more closely scrutinize the substantive unconscionability of terms that were artfully hidden by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." *Baltazar,* 62 Cal. 4th 1246 (2016) (cleaned up).  But, since Villanueva's "challenge to the enforcement of the agreement has nothing to do with the AAA rules," Maxim's "failure to attach the AAA rules therefore does not affect" the consideration of "substantive unconscionability." *Baltazar*, 62 Cal. 4th at 1246; *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (citing *Baltazar* and noting "the incorporation of [AAA rules] by reference does not support [Plaintiff's] claim that the dispute resolution provision was oppressive").

### b.    Substantive Unconscionability

Under California law, "[s]ubstantive unconscionability focuses on the one-sidedness of the contract terms."  *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)).  An arbitration agreement is unconscionable unless the "arbitration remedy contains a modicum of bilaterality" considering the "affects of the challenged provision."  *Ting*, 319 F.3d at 1149 (cleaned up).  In California, "unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain."  *Baltazar*, 62 Cal. 4th at 1246 (cleaned up).  "The ultimate issue in every case is whether

United States District Court
Northern District of California

the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.* (quotations and citations omitted).

### i.     Discovery

Villanueva argues the arbitration agreement is unconscionable because it unfairly limits discovery. "Although parties may agree to something *less than* the full panoply of discovery, employees are at least entitled to discovery sufficient to adequately arbitrate their statutory claim." *Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035, 1058 (2022) (cleaned up). "In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims." *Id.* (quotations and citations omitted).

Villanueva challenges the portion of the arbitration agreement which states: "The Arbitrator shall have no authority to require any party to produce contact information, or to order the issuance of a notice, based on class, collective, or representative action procedures."[1]  (Dkt. No. 8-3 at 24.)  She asserts this provision is substantively unconscionable because it "expressly forbids the arbitrator from compelling Defendants 'to produce contact information' for any witness, preventing employees like Plaintiff who arbitrate against Defendants from even taking the first step to investigate whether any of their coworkers or supervisors have evidence that may support their claims." (Dkt. No. 18 at 19.)  According to Villanueva, such a limitation is inequitable because the employer already has such contact information in its possession.  The Court disagrees. The extent to which this provision limits discovery hinges on the second comma. That comma—which sets off "or to order the issuance of a notice"—indicates the phrase "based

---

[1] Maxim asserts the arbitration agreement "allows for adequate discovery because it requires the parties to follow the AAA Employment Arbitration Rules." (Dkt. No. 19 at 14.)  But, under California law, when an arbitration agreement incorporates the AAA Rules, but also "deliberately replace[s] the AAA's discovery provision with a more restrictive one," the terms of the more restrictive, specific agreement trump the AAA discover rules.  *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 719-21 (2004).  Thus, the AAA Rules are no defense to any allegedly unfair discovery provision in the arbitration agreement signed by the parties in this case.

on class, collective, or representative action procedures" limits the entire sentence. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021) ("As several leading treatises explain, a qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one.") (cleaned up). So, the arbitrator does not have authority "based on class, collective, or representative action procedures" to force Maxim to produce contact information. In other words, the arbitrator is not absolutely barred from requiring Maxim to product contact information; instead, the arbitrator is barred from ordering Maxim to produce contact information *for the purpose* of pursuing a class, collective, or representative action.  The arbitrator is not restricted from compelling Maxim to produce contact information for witnesses in connection with Villanueva's individual claims. Since Villanueva has not challenged the class action waiver provision of the arbitration agreement, Villanueva recognizes she can bring a proceeding in arbitration as an individual only and so any collective or class-based limitations would not apply to the proceeding.  As a result, any limitations on the arbitrator's ability to require Maxim produce contact information does not apply to Villanueva.

### ii.       Mutuality of the Arbitration Agreement

Villanueva also argues the arbitration agreement is unconscionable because it lacks mutuality.  "[T]he paramount consideration in assessing conscionability is mutuality."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Abramson v. Juniper Networks*, Inc., 115 Cal. App. 4th 638, 657 (2004).  "An agreement may be unfairly one-sided," and therefore substantively unconscionable, "if it compels arbitration of the claims more likely to be brought by the weaker party but exempts from arbitration the types of claims that are more likely to be brought by the stronger party."  *Ramirez v. Charter Communications, Inc*., 75 Cal. App. 5th 365, 382-83 (2022) (cleaned up).  "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope . . . the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 118 (2000).  California courts have recognized claims related to "noncompete agreements and intellectual property claims" are "far more often" filed by

employers.  *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 725, (2004).  Thus, if an adhesive contract between an employer and employee requires arbitration for all claims except for those arising from noncompete agreements and intellectual property claims, the agreement is likely substantively unconscionable.[2]

Villanueva argues Maxim's arbitration agreement does just that, as it "requires claims typically brought by employees be arbitrated" while "carv[ing] out claims that are typically brought by employers, such as claims for breach of the" Non-Solicitation and Non-Disclosure Agreement.  (Dkt. No. 18 at 15.)

To start: Maxim's insistence Plaintiff lacks standing to challenge the Non-Solicitation and Non-Disclosure Agreement because "no one is seeking to bring claims under this non-solicitation agreement" (Dkt. No. 19 at 13) is wrong.  Since "the unconscionability analysis evaluates whether the agreement is bilateral at the time it was made rather than as applied to specific plaintiff," *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 384 (2022), it does not matter neither party is bringing any claims under the Non-Solicitation and Non-Disclosure Agreement.

In this case, the arbitration agreement specifically *covers* "[c]laims for breach of the Non-Solicitation, Non-Disclosure and Non-Competition Agreement between EMPLOYEE and MAXIM if EMPLOYEE is employed in California at the time of the alleged breach."  (Dkt. No. 8-3 at 21.)  As both sides agree Villanueva was exclusively employed by Maxim in California, claims brought by Maxim under the Non-Disclosure Agreement are subject to the arbitration agreement so long as the employee is working for Maxim "at the time of the alleged breach."

Villanueva's opposition does not even acknowledge the coverage for California employees.  (Dkt. No. 18 at 14-18.)  For that reason, alone, she has not met her burden on showing non-mutuality sufficient to make the agreement unconscionable.  During oral argument, Villanueva asserted for the first time this provision is non-mutual because it excludes potential

---

[2] California law does provide contracts lacking mutuality may still be enforceable so long as "business realities" which justify the lack of mutuality are "explained in the contract itself" or "factually established." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000). Since Defendant has not suggested any such "business realities" were present in this case, the Court considers this argument waived.

United States District Court
Northern District of California

1    claims made by Maxim against former employees whose breach of the Non-Solicitation, Non-

2    Disclosure and Non-Competition agreement occurred after the termination of their employment

3    with Maxim.  (Dkt. No. 8-3 at 21 (arbitration agreement covers claims involving employees

4    "employed in California *at the time of the alleged breach*" (emphasis added)).  As evidence of

5    non-mutuality, Villanueva identifies four complaints Maxim has filed against such former

6    employees in federal court alleging violations of its confidentiality, non-solicitation, and trade

7    secrets agreement.[3]  (Dkt. No. 18-4 at 2.)  At oral argument, Villanueva argued a breach of

8    confidentiality, non-solicitation, or trade secrets is most likely to happen once the employee is

9    working for another company and therefore no longer employed by Maxim.  Thus, Villanueva

10    asserts the claims most important to Maxim—e.g., actions alleging a former employee is stealing

11    clients or exposing Maxim's confidential information to Maxim's competitors—can be brought in

12    court, whereas the claims most important to employees must be arbitrated.

13         The Court agrees this element of the arbitration agreement is non-mutual.  To the extent a

14    former employee's breach occurred after the termination of employment, Maxim is not required to

15    arbitrate the claim.  However, "[n]ot all one-sided contract provisions are unconscionable."

16    *Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1245, 367 P.3d 6, 12 (2016).  Most of Maxim's

17    potential claims will go to arbitration, only those claims related to a breach of the "Non-

18    Solicitation, Non-Disclosure and Non-Competition Agreement" by former employees that

19    occurred after the employee's Maxim employment ended are exempted. Indeed, the complaints

20    Villanueva identified suggest breaches of confidentiality, non-solicitation, or the trade secrets

21    agreement often occur while an employee works for Maxim—meaning those complaints would

22    likely be subject to arbitration in California.[4] Two of the complaints identified explicitly allege

23    employees "downloaded" confidential information while working for Maxim, then later used

24    _____

25    [3] The Court takes judicial notice of these complaints as a matter of public record. (Dkt. No. 18-4);
     *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is

26    appropriate for "undisputed matters of public record, including documents on file in federal or
     state courts" (citation omitted)).

27    [4] The complaints Villanueva identified all concern employees working outside of California.
     (Dkt. No. 18-4 at 2.)  Thus, in those cases, breaches of confidentiality, non-solicitation, or the

28    trade secrets agreement were exempt from arbitration even if they occurred while the employee
     was still working for Maxim.

passed that stolen information to Maxim's competitors. (Dkt. No. 18-4 at 15, 118).  The remaining complaints also allege some violations that occurred while the employee worked for Maxim. (Dkt. No. 18-4 at 173, 243.)

Villanueva has not met her burden of showing the arbitration agreement is unconscionable. She cites no cases suggesting this one-sidedness alone is sufficient for finding the contract unenforceable.  Every case Villanueva cites in which a court found a contract to be unenforceable involves multiple findings of substantive unconscionability. *See Davis v. Kozak*, 53 Cal. App. 5th 897, 910-17 (2020) (finding substantive unconscionability because of (1) a lack of mutuality in provision exempting all breaches of confidentiality from arbitration; and (2) limitations on discovery in arbitration proceedings); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1000-05 (9th Cir. 2010) (finding substantive unconscionability because of (1) a lack of mutuality based on arbitration agreement that allowed one party to litigate all claims in court while forcing other party to bring all claims in arbitration; and (2) agreement's shortening the statute of limitations for claims brought in arbitration); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 247-54 (2016) (finding substantive unconscionability because of (1) a lack of mutuality in agreement requiring employee to arbitrate "any and all disputes" but allowing employer to obtain a court's injunction for all breaches of the nondisclosure and exclusive use provisions; and (2) agreement's waiving of statutory right to recover attorney fees); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 174-79 (2002) (finding substantive unconscionability because of (1) a lack of mutuality in agreement excluding all claims related to trade secrets, unfair competition, or confidential information from arbitration; and (2) disadvantages to employee of using particular arbitration provider to be substantively unconscionable); *Ramirez v. Charter Communications, Inc.*, 75 Cal. App. 5th 365, 374-85 (2022) (finding substantive unconscionability because of (1) lack of mutuality in agreement excluding all claims related to trade secrets, unfair competition, confidential information, or non-compete agreements from arbitration; (2) provision awarding attorney fees to the prevailing party on a motion to compel arbitration; (3) shortening the statute of limitations for claims brought in arbitration; and (4) limitations on discovery in arbitration).  Moreover, "[a]ny doubts about the scope of arbitrable issues, including applicable contract defenses, are to be

resolved in favor of arbitration." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017). As a result, Villanueva has failed to establish the arbitration agreement is unenforceable.

### C.      Plaintiff's Claims are Covered by the Arbitration Agreement

Having dispensed with the first gateway issue, the Court now turns to the second: whether Villanueva's claims are covered by the arbitration agreement. The arbitration agreement extends to "all existing or future disputes, claims, or complaints . . . that directly or indirectly arise out of or relate to EMPLOYEE'S recruitment, application, employment or separation from employment with MAXIM." (Dkt. No. 8-3 at 20.) Villanueva does not assert her claims fall outside the arbitration agreement, nor could she. So, the arbitration agreement covers her claims.

### CONCLUSION

For the foregoing reasons, the arbitration agreement applies to all of Villanueva's claims and is enforceable under the Federal Arbitration Act. Accordingly, this Court GRANTS Defendant's Motion to Compel Arbitration and STAYS this action pending resolution of arbitration.

Maxim also requests this Court take judicial notice of orders in two federal cases— *Marchant v. Maxim Healthcare Services, Inc.*, Case No. 2:18-CV-02757-RMG (D.S.C. Nov. 5, 2018) and *Hammer v. Maxim Healthcare Servs., Inc.*, Case No. 8:16-CV-03533-EAK-AAS (M.D. Fla. Mar. 15, 2017). The Court declines to take judicial notice of these cases because both can be found in widely available online legal research services and caselaw is ordinarily not a proper use of judicial notice. *See United States v. Murillo*, No. CR16-0113JLR, 2020 WL 6701004, at *2 (W.D. Wash. Nov. 13, 2020) ("[A]sk[ing] the court to take judicial notice of caselaw . . . is not a proper use of judicial notice."). Next, Maxim requests the Court take judicial notice of three California superior court orders. Since these cases are not available on commonly used legal research services, the Court GRANTS Maxim's request for judicial notice of the California state orders.

The parties are directed to file a status update with the Court within (1) 30 days of the arbitration ruling, (2) within 30 days of the parties' own resolution of the case, or (3) September 1, 2024, whichever occurs first.

1    This Order disposes of Docket Number: 8

2    **IT IS SO ORDERED.**

3    Dated: September 11, 2023

4

5    JACQUELINE SCOTT CORLEY

6    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

12